FINAL COPY
294 Ga. 426

S13A1886. BRITT v. SANDS et al.

NAHMIAS, Justice.

In this probate case, the testator's daughter challenges the propounder's petition to probate a copy of the testator's will. The Probate Court of Gwinnett County found that the propounder was unable to overcome the presumption that the testator intended to revoke the will created when the original will cannot be located. See OCGA § 53-4-46. Because there is evidence supporting the probate court's finding, we affirm the denial of the petition to probate.

1. Edward Major died on April 18, 2012. On May 9, 2012, appellant Beverly Britt, his fiancée, filed a petition to probate a copy of the will that Major made on January 26, 2007. Britt and her sister each had a copy of the will, but the original could not be located. Appellee Michelle Sands, Major's daughter and only heir at law, filed a caveat, alleging among other things that Major had destroyed the original will to prevent it from being probated.

"A presumption of intent to revoke arises if the original of a testator's will cannot be found to probate." OCGA § 53-4-46 (a). However,

[a] copy of a will may be offered for probate . . . in lieu of the original will if the original cannot be found to probate, provided that the copy is proved by a preponderance of the evidence to be a true copy of the original will and that the presumption of intent to revoke . . . is rebutted by a preponderance of the evidence.

OCGA § 53-4-46 (b).

On March 28, 2013, the probate court held an evidentiary hearing to determine if the propounder of the will copy could overcome the presumption of revocation. Testimony showed that Major drafted his January 2007 will — the only will he is known to have made — without a lawyer but with the help of Britt, and he and two witnesses then signed the will at a bank. The will provided for Britt to inherit Major's lake house, his deferred compensation benefits, and his Jeep, and for Sands to inherit his retirement benefits, his Mitsubishi Eclipse, his interest in his house, and "miscellaneous items." The will also made specific bequests for his granddaughter, Amber Lacy, his sister, and his cousin.[1]

None of the witnesses at the hearing had seen the original will since the day it was signed. According to Britt, Major said that he was going to put the

---

[1] Amber Lacy is listed in the will as Amber Nix. These three beneficiaries were listed on our docket as appellees because they appeared in the probate court, but they did not appeal the probate court's order or enter an appearance in this Court.

2

will in one of his lockboxes and later said that someone had broken into both lockboxes and that "he didn't know what happened to the will. He felt like whoever was staying at his house had destroyed it, had taken it." Sands testified that someone did break into one of Major's lockboxes, but when she went through the contents of the box with him after the break-in, she did not see a will and the only thing he told her was missing was a coin collection. Sands also indicated that Major himself broke into the other lockbox because he did not have the key to open it.

Several witnesses testified that Major had said that he wanted to leave property — his lake house in particular — to Britt and that Major's relationship with Sands was strained. Major's caretaker also testified, however, that while Major still loved Britt, shortly before his death he said that she had "lost that loving feeling for him," and Britt testified that although she had accepted Major's marriage proposal, she repeatedly refused to go through with the wedding.

At the conclusion of the hearing, the court made oral findings, noting first the lack of clear evidence as to what happened to the original will: "I didn't hear a whole lot of evidence about the original will and where it was. It was alleged

3

to be in a lockbox, or it might be two lockboxes. Maybe one was broken into. Maybe one wasn't broken into." The court observed that while several witnesses testified that they did not think Major would leave anything to his daughter, Sands was listed in the will four times. That inconsistency led the court to question if the will represented Major's testamentary intent or if he had "put on a show for some people and then, in private, [decided to] change his mind and not tell anybody about it." The court also noted that witnesses testified that Major was a "smart man," and while he followed formal procedures to revoke his power of attorney, he did not use an attorney in drafting the will. The court concluded that "there's a good solid question out there of what his intent was."

On April 4, 2013, the probate court issued an order formally denying the petition to probate, explaining that "it is the finding of this Court that the propounder was not able to overcome the presumption that the testator's Will was revoked where the original cannot be located, and it is the finding of this Court that Edward L. Major died intestate." Britt then filed a timely appeal to

this Court.[2]

2.    The absence of Major's original will created an evidentiary presumption that he did not want that will to be probated — that he intended to revoke the will.  See OCGA § 53-4-46 (a).  In propounding a copy of the will, Britt had the burden of rebutting that presumption "'by showing, by a preponderance of the evidence, both that [Major] did not intend to revoke the will and that [the] proffered copy is a true copy.'"  Thomas v. Sands, 284 Ga. 529, 530 (668 SE2d 731) (2008) (citation omitted); OCGA § 53-4-46 (b).  "Whether the presumption of revocation is overcome is determined by the trier of fact, and in reviewing the [judgment], the evidence must be accepted which is most favorable to the party in whose favor the [judgment] was rendered."  Thomas, 284 Ga. at 530 (citations and punctuation omitted).  Moreover, "[t]his Court will not set aside the probate court's factual findings unless they are clearly erroneous, meaning that they will be upheld if there is any evidence to sustain them."  Parker v. Kelley, 290 Ga. 454, 455 (721 SE2d 828) (2012).

---

[2] OCGA §§ 15-9-120 (2) and 15-9-123 provide the right to appeal directly to the appropriate appellate court, rather than to the superior court, decisions from a probate court in a county with a population exceeding 90,000, like Gwinnett County.  This appeal came to our Court rather than the Court of Appeals because the case involves the validity of a will.  See Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (3).

The evidence presented by the parties in this case was conflicting, both as to the disposition of the original will and as to Major's testamentary objectives. Britt offered testimony that the original will was stolen from one of Major's lockboxes, that he had a strained relationship with Sands, and that he wanted her and others besides Sands to inherit his property. But Sands offered evidence that Major was careful in his legal affairs, that the original will was not stolen as Britt claimed, that his relationship with Britt also had its problems, and that the propounded will left Sands considerable property, showing that her relationship with her father was not broken. The probate court, which had the opportunity to observe all the witnesses and to evaluate their demeanor and credibility, could have decided this case either way; the court found that the evidence offered by Britt was insufficient to overcome the presumption of revocation. We cannot say that this finding was clearly erroneous, as there was evidence in the record to support it, particularly when that evidence is viewed, as it must be on appeal, in the light most favorable to the party that prevailed below. See Thomas, 284 Ga. at 530; Parker, 290 Ga. at 455. The judgment of the probate court is therefore affirmed.

Judgment affirmed. All the Justices concur.

Decided January 21, 2014.

Wills. Gwinnett Probate Court. Before Judge Ballar.

<u>Chandler, Britt, Jay & Beck, Gregory D. Jay</u>, for appellant.

<u>J. Kevin Tharpe, John E. Tomlinson, Donald S. Horace</u>, for appellees.